Josiah E. Mewes et al. *v*. Crescent Pipe Line Co., Appellant.

*Pipe line—Eminent domain—Evidence—Expert witness—Competency of witness.*

A witness is competent to testify as to the damages caused by the construction of a pipe line across a farm, where it appears that he lived in the neighborhood, and knew the character of the soil of the farm, the kind and quality of the improvements upon it and the selling prices, and the prices for which lands had been offered in the locality during the two years prior to the trial; but one who has never seen the farm is not competent to testify as to the effect of the construction and maintenance of a pipe line upon his own farm.

It is not improper for the court to refuse to charge in an action to recover damages for the construction of a pipe line, that greater weight is to be given to the testimony of those who have knowledge and observation of several sales of land upon which pipe lines had been constructed than of a witness who had knowledge of but one such sale. The question in such a case is one for the determination of the jury under all the evidence, and the credibility they may attach to testimony of the respective witnesses.

Argued Feb. 11, 1895. Appeal, No. 462, Jan. T., 1894, by defendant, from judgment of C. P. Chester Co., Aug. T., 1893, No. 131, on verdict ·for plaintiffs. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal by plaintiffs from the report of a jury of view, assessing damages for injuries sustained by reason of the defendant's location and construction of its pipe line upon their premises. Before HEMPHILL, J.

At the trial the testimony of R. W. Schrack, a witness for plaintiffs, showed that he was familiar with the manner in which the plaintiffs' farm had been cut by defendant's pipe line and

had observed its effect upon the land. He also testified as follows:

"Q. You are a farmer? A. Yes, sir. Q. You are familiar with the property of the plaintiffs? A. Yes, sir. Q. You have been along the line where the pipe line is now? A. Yes, sir. . . . Q. You are familiar with the character of the soil of this place? A. Yes. Q. Do you know what the improvements are? A. Yes. Q. And the character of the improvements? A. Yes. . . . Q. Are you familiar with the selling prices and the prices for which lands have been offered in that locality during the last two years? A. Yes, sir. Q. In your judgment how much per acre has the property been depreciated by the construction of the pipe line?"

Mr. Reid: ".I object."

The Court: "Objection overruled."

To which ruling counsel for defendant except, and pray the court to seal a bill of exception thereto. Bill sealed.

"Q. In your judgment how much per acre has the property depreciated? A. I would say $15.00 to $20.00 per acre." [1]

Charles S. Carter, a witness for the defendant, testified:

By the Court: "Q. Do you have a pipe line through you? A. Yes, one about twelve years and another about four years. The Standard, and lines controlled by it, cross my place."

By Mr. Reid: "Q. You owned the property at the time the lines were put down? A. Yes. Q. Please state to the court and jury what was the effect upon the crops; how long it lasted, and in what way, and how you can use your farm now?"

Mr. Holding: "I object."

The Court: "I do not see that it is admissible. It would depend upon what care and expense he put upon it afterwards."

Mr. Reid: "I want to show for the enlightenment of the jury as to how long it would probably be before a pipe line could be farmed over as before—after a man has taken all the care necessary, how long it would take to get it back into proper condition, and the results afterwards."

The Court: "It depends upon circumstances how long it, would take. One might do it sooner than another. The objection is sustained. Bill sealed." [2]

Defendant's point, with the answer thereto, among others, was as follows:

" 5. The weight to be given to the testimony of witnesses as to the depreciation in the market value of lands, having upon them pipe line easements, depends upon their knowledge and observation of sales of lands, so affected, and greater weight is to be given to the testimony of those who have knowledge and observation of several of such sales, than of a witness who has knowledge of but one such sale. *Answer :* We cannot affirm that point as written. Of course the greater opportunity for observation, and the greater knowledge and experience, the better is the witness qualified to testify, but the weight to be given to the testimony is largely dependent upon the credibility of the witnesses, and what credit shall be given to their evidence is for the jury. So that I cannot say to you, as a matter of law, that greater weight is to be given to the testimony of those who have knowledge and observation of several of such sales, than of a witness who has knowledge of but one such sale. The question is one for your determination, under all the evidence, and the credibility you may attach to the testimony of the respective witnesses." [3]

Verdict and judgment for the plaintiffs for $2,437.50, defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions ; (3) above instructions, quoting them.

*S. D. Mitchell* and *Alfred P. Reid*, for appellant.

*Monaghan & Holding*, for appellees.

PER CURIAM, October 7, 1895 :

This case was argued with No. 461, January term, 1894, in which an opinion affirming the judgment has just been filed. The first and second specifications relate to the competency of the witnesses mentioned therein respectively. We are not convinced that there was any error in receiving the testimony of the one or rejecting that of the other. Nor do we think there was any error in the learned judge's answer to the defendant's point recited in the third specification.

Judgment affirmed.